All rise. Standing in the order of the Judicial Commission, Division of the Telephone is now in session. Honorable Justice Weaver-Mulvich is present. Please be seated. Thank you. Madam Clerk, will you please call the first case? 115-1844, Federal Transportation Corporation, Workers' Transportation Commission. Counsel, you may proceed. May it please the Court, Justices, Mr. Grinnell. My name is Mark Grizzo and I represent the plaintiff appellant, Professional Transportation Corporation. Our argument in this case is two-fold. The first one is that the decision issued by the Illinois Workers' Compensation Commission on April 12, 2011, regarding the L-5 disc was not against the manifesto weight of the evidence as found by Justice Judge Lopez-Sapera. The Commission issued its decision, the case went up, and Judge Lopez-Sapera split the decision, finding that the Commission's decision regarding the L-3 disc was not against the manifesto weight, but the L-5 disc was against the manifesto weight, and he remanded it back. Our original position is that that decision by Judge Lopez-Sapera was incorrect and the Commission's decision was not against the manifesto weight. The accident reports in all the medical visits right after the accident indicate that the petitioner was having a grind injury and there was nothing regarding his back. When he first mentioned a back injury, he related it to something other than a motor vehicle accident, and in fact stated it began September 1st as no apparent mechanism of injury. And on October 14, 2006, he stated that it was related to something that began earlier that day. Dr. Munson reviewed the medical records of the amnesty petition and found no causal connection. He didn't know the herniated disc from 2004, and he had anemorrhagic from 2004, and he compared them and saw there was no difference between prior and subsequent to the accident. The only evidence of causal connection to this disc is Dr. Bellin, and he didn't have all the records. He didn't know that right after the accident, the petitioner at that time, the defendant was not complaining of any back pain. There's reports that state that the history is all over him and the cause of the back pain is from different areas. Without Dr. Bellin's opinion, there's no evidence at all regarding causal connection, and we feel that Dr. Bellin's opinion shouldn't be given any weight because he didn't have all the records. The arbitrator, excuse me, Judge Lopez-Sapero, found that the commission's decision was against the manifest way of the evidence regarding the L5 disc. Did he articulate any specific reasons? He issued an order stating that the decision regarding the L3 disc was not against the manifest way and the L5 was. That was the total of his decision. The decision, the commission's decision was an adoption of the arbitrator's decision, so most of the facts are in the arbitrator's decision, but that is the decision of the commission. And the decision speaks, it doesn't separate anything about the L3, L5 disc, it just speaks to the back. And it says the defendant failed to prove that his current condition of being is related to that accident. And that condition is the complaints regarding his lumbar spine. We feel the evidence was sufficient to support the commission's decision finding no causal connection. The commission assessed the credibility of the witnesses, drew reasonable inferences from the evidence, and determined what way to give the evidence. That's their province and it's our position that their April 12, 2011 decision should be reinstated and all orders and decisions entered subsequent and flowing from the erroneous reversal by Judge Lopez-Sapero on his judgment of March 15, 2012 should be vacated. Our second argument is that should you disagree with that, the second decision of the commission was against the manifest way of the evidence. Judge Lopez-Sapero remanded it back. The commission in decision found that they were bound to find causal connection by the L5 disc, just based on that sentence in his decision. So they remanded it back to a new arbitrator who awarded the petitioner medical bills, temporary total disability, and permanency. Our position is that that award is against the manifest way of the evidence. And the reason is we know that the L3 disc is not related to his accident. The commission found that. Judge Lopez-Sapero affirmed that. The medical bills awarded were over $52,000. And the commission in its decision says it's essentially impossible to separate the above medical expenses based upon whether they occurred relative to the L3 or L5 herniations. Well, to me, that's a failure of proof. Because the petitioner in the underlying case has the burden of proof, the proof that the medical expenses are related to the L5 disc. And the commission essentially says that was not done. The second part is that the bills of spines, sports, and occupational medicine are not related to the L5 disc. Those are the bills of Dr. Liz Funnell. Dr. Liz Funnell's records are put in evidence, and she treated the L3 disc. There's nothing in her records regarding treatment to the L5 disc. So those bills are not related to the L5 disc and should not be awarded. There's no treatment in any of her records regarding the L5 disc. As to the bills of orthopedic associates, they're treatment to the low back. They don't say L3, L5. They just say low back. Again, to me, that's a failure of proof. There could have been some evidence defended in Vincent's brief that could have retained an expert to distinguish the treatment but chose not to do so. The commission was able to relate some bills. They threw out some bills awarded by the arbitrators. They were able to find some bills not related, but they basically said they can't separate the bills. So, again, that's a failure of proof. And the courts have said there's no indication that treatment provided is reasonable and related. As a result of the accident, it's not entitled to medical expenses. So it's our position that those bills are not related, and at some of them there's been no proof that they are related to the L5 disc. As to temporary total disability benefits, they awarded 187 and one-seventh weeks of TTD based upon one medical report dated October 3, 2010. The petitioner in that case failed to prove that that slip is related to the L5 disc. The only doctor to actually limit going way back when was Dr. Parker, who relates it to the date of accident in which all the reports state it was a groin injury. So there's nothing to uphold the commission's decision to award 187 and one weeks of temporary total disability benefits. As to the permanency, they awarded 30 percent loss to use of management at all. Again, we feel this is against the manifest way of the evidence because there's been no surgery recommended to the L5 disc. The only surgery was to the L3 disc, and that's been proven not to be related to the accident. There's no evidence of any disability from the L5 disc. Therefore, we feel that the award of 30 percent loss to use of management at all was against the manifest way of the evidence. So, in summary, our position is twofold. One, that the first decision of Judge Lopez-Sapero was against the manifest way of the evidence, and the second, which is his second decision, which was his last decision ever as a judge, was against the manifest way. Counsel, before you conclude, just for clarification as to the framing of the issues, which decision are we actually reviewing under a manifest way standard here? Because it seems you and the other party have a disagreement as to the framing of the issues. Well, our issue is the cases were consolidated before Judge Lopez-Sapero, so both cases, the first case was not a final decision as he remanded it, so we've appealed both decisions. Our first position is that the decision of the commission issued first was not against the manifest way of the evidence, and Judge Lopez-Sapero's order was incorrect. In other words, the original decision. The original decision was not against the manifest way of the evidence. Judge Lopez-Sapero may not have liked it, but I don't think there was anything against the manifest way.  So if you disagree with the first argument, the second argument is that decision of the commission is against the manifest way of the evidence based upon a lack of evidence, a lack of proof by the petitioner defendant, the appellee in this case. But your position is that if we agree that the original commission decision was not against the manifest way of the evidence, that ends the inquiry. No, because there's a second decision. They issued a second decision completely different than the first. And if you agree that there is causal connection to the L5 disk, then you have a new decision awarding permanency, TTD, and medical. And that decision is against the manifest way of the evidence. It's a twofold argument depending on which way the first one goes. Thank you, counsel. Counsel, you may respond. Christopher Noel for Mr. Cioffi. I'm the L.E. May I please the court? Good morning, Your Honors. I want to thank you on behalf of Mr. Cioffi, first of all, for your time here today. I want to begin by saying something you probably don't hear very often. I don't have much to say on this case. Pretty straightforward issues. This is a simple, straightforward case.  One was Judge Lopez-Sapero's argument that the L.A. in reversing arbitrator Hagan's decision of June of 2010. And two, under the manifest way of the evidence, as the claimant proved that all mistreatment was causally related to the accident of August 2006. Now, you realize we review the commission's decision, not the arbitrator's decision. Yes, I understand. Okay. So it's our position that Hagan's original decision was incorrect and that Lopez-Sapero's analysis when he reversed that was correct. And let me explain why. What was his analysis? That's why I asked the opposing counsel. What did the trial judge articulate as the factors that caused him to reverse the commission's decision? Well, I'm glad you asked me that. I was about to tell you because it's all about the MRI. That's the key that Lopez-Sapero in his analysis, and it's the key I think for this panel as well, is that before the accident there had been prior MRIs of Mr. Cioffi that he had a disc injury in his L3. But there was a second MRI that showed a new disc herniation. And the commission was aware of this, weren't they? Hagan was aware of it. I don't know why she disregarded that, but it's right there in the report. That's why I think that he reversed it because I think that he thought that she maybe overlooked that. He didn't really say definitively what she did, but he said the defining of the new MRI with the second disc, that's the key issue here. Let me call your attention to some other issues that are a little bit troubling. The commission articulated specific reasons why they ruled against the claimant. Keys were they felt that the claimant reported no back pain for approximately two weeks after the accident, despite several opportunities to do so. And they also weighed the conflicting medical evidence against the claimant. They felt they gave greater weight to Dr. Munson's opinion than the other doctor. Why can't they do that? Well, one, I don't know if Dr. Munson had both MRIs. I think that's in the record. And secondly, we disagreed with that because none of the experts in this case ever gave any testimony that my client was not injured because of this accident. There was some credibility issues with the client himself. No case is perfect, right? I mean, he gave some inconsistent testimony. But the important part of the case is, and I think the most important thing, and I don't know if Hagen saw it or if she didn't because in my brief I even said it, one of the things she quotes in the same page that Hagen's talking about in her decision, it says, and I don't want you to take my word for it. Let me just read this to you. I'm going to quote it. Dr. Bellin says, quote, It is my opinion that the patient has developed a new disc herniation with radiculopathy on the left side as a result of the motor vehicle accident on August 20th. His condition is quite severe and is now at the point where he would have surgery and he remains disabled. That's what the doctor said. In fact, I wanted to compare something just to give you an idea about the weight of this case. The case that we cite in our brief, a home-break case, the court upheld a decision in that case based on causation. Because, you know, it was our verdict, right? Listen to this. The expert in that case said, quote, It's possible the neck problem might be related to that. I think there's certainly the possibility of a causal relationship. The possibility. The court upheld that opinion as sufficient for causation because they said, quote, It's for the commission to determine which medical opinions to be accepted and it may attach greater weight to the treating doctor's opinion. Well, how does that help you? Because what you just said is the commission weighs the evidence. They can give deference to one opinion over the other, which ostensibly they did in the original decision. So how does that help you? We're not doing violence to the principle that we don't substitute our judgment for that of the commission on medical evidence. Except that our position is that did Hagen look at the fact that there was a second MRI that showed a new disc herniation? That's undisputed. He had one. The next day afterwards he had two. And the doctor said right there that that's from this accident. I think that that's why Lopez-Sopero reversed on the second one, not the first one. We've always conceded he had a prior disc problem. Well, if you do that again, how do we substitute our judgment? The trial judge picked out one piece of evidence, saying, Is that what we're supposed to do when we review a commission decision? Well, I think that you have to give a certain weight to the evidence, and an MRI doesn't lie, okay? Even if you have credibility issues with Seeoffi and he said certain things. But how does anybody get past the fact that he had one and now he's got two? That's undisputed. And that the doctor says that that's because of this accident. How can anybody get past that? Even if you had problems with some of the other issues of Seeoffi on his credibility, that he said that his groin hurt and some of the other things that counsel points out in his brief. So really it boils down to you have one doctor who says that it is, and we have Dr. Munson who says no. That's right. And I think if you look at the record, I don't know if Munson had both MRIs. Well, he didn't. Bellin did, and Bellin concluded that it's from the accident. But didn't Munson say, well, it might have been helpful, but it wouldn't change his opinion? No, he didn't. He did not? He didn't know. He didn't know? As far as I know, he didn't know. Munson didn't know, and Bellin did. And that makes Bellin's more tough. I think that gives more weight to that doctor. And furthermore, we have testimony from Seeoffi that he was asymptomatic before the accident, and he became symptomatic after. Remember, the kind of job that he had, Your Honors, was that he drove a truck, and he sat all day. He did that for years before the accident, even with his other injury. But after the accident, the reports, and it's all in the records, say that he couldn't do it. His pain was 10 out of 10. Well, he was exposed to an injury in his attorney's office, right? He sat there for two hours? Well, that could injure anybody, right? Oh, okay. So why did he wait two weeks? That was one of the things. The commission felt that he would have, given the severe nature you're saying, that there would have been some symptoms or pain manifesting itself immediately. He goes in and sees several medical providers. Two weeks go by, doesn't mention anything about any back pain. What's the reason for that? Well, I think that you have to draw the inference that sometimes these kind of symptoms can come on gradually. Is there any evidence testifying as to that? Why it remained asymptomatic? Was there any medical evidence that testifies to that? There's no medical evidence as to why it manifested itself two weeks after, no. Okay. There's no medical evidence either way. There's no medical evidence saying that a herniation in L5 could remain symptomatic, asymptomatic for two weeks, or couldn't. That's right. So you have nothing in support of your side, nor does your opponent have anything on that issue. That's right. But you still have the fact that he didn't report anything for two weeks, which the commission took into consideration, and you have Munson's opinion. And I know you don't like Munson's opinion, but Munson, pardon me, the other doctor that testified for the respondent, his opinion was it was all related to degenerative condition. Was it not? I don't know if Munson said that it was all related to a degenerative condition, but certainly Munson knew that he had this prior injury. But Munson, nobody in this case ever said that none of these conditions are from this accident. There's no testimony to that. It's a matter of is this an aggravation of a preexisting? Is it symptomatic from asymptomatic? And also the fact that, like I told Justice Holdridge, I don't think that Munson had the second MRI, and I think that's the key thing, that you have two discs now as opposed to one. Where did the other disc come from? It really comes down to the principle of Occam's razor, but the simplest explanation tends to be the one that he had one disc problem and now he's got a second one right after this accident when there's a new MRI. That's an amazing set of coincidences if it's not from this accident. So, but in conclusion, we feel that all the opinions that were after that, the O'Malley decision and the full commission should be upheld in the manifest way. If you look through, the commission did cut some bills that they thought were underrated. We even conceded as such there was some testimony that Mr. Sioffi had a couple of treatments for a cold or some sickness, and that was stricken by the full commission. They gave a reduced award. So it's been fully considered, and we would just ask that you uphold that. And thank you very much for your time. Thank you, counsel. No, thank you. Thank you, Ron. Counsel, you may reply. Very briefly. Dr. Bowen's opinions, he may have reviewed the MRI, but he didn't have any of the medical reports from right after the accident showing no complaints. He's just assuming that when he saw him, he was complaining of back pain. It must have been related. So I don't think by his not having a full history, he didn't have the opportunity to determine if they were related or not. And I believe that our position is that Dr. Munson did have both, and he saw no change. And that the commission waived testimony to doctors, and they gave more weight to Dr. Munson is their purview. Thank you. So you think Munson had both? I believe. I thought he testified in his reports that he had reviewed both. I believe he did. I don't think that's right. I think he acknowledged that he hadn't seen it, but it wouldn't have changed his opinion as I think it was. It would have been helpful, but it would not have changed his opinion. I stand corrected. It's been a long time since I tried the case. But our position is that either way, the commission had both MRIs, and the commission found Dr. Munson, gave more weight to Dr. Munson, and that's their purview. So, as Dr. Palin didn't have all the records either when he made his opinion, when he gave his opinions. Thank you. Thank you, counsel, for this matter. Thank you both, counsel. This matter will be taken to an advisement.